UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| JULIANA GOMEZ-CRUZ, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 18-cv-1145 (APM) |
| CORNERSTONE CAFÉ, INC. et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Juliana Gomez-Cruz worked at Cornerstone Café in Washington, D.C. for 13 years before her termination in November 2017. She brought this action against the cafe and its owners, Dae Woong Kim and Kookhee Park (collectively, "Defendants"), to recover the statutorily required minimum and overtime wages that she alleges were not paid during her employment. Defendants were properly served but failed to respond to Plaintiff's Complaint, after which Plaintiff obtained an entry of default. Plaintiff then moved for default judgment, seeking the relief requested in her Complaint. For the reasons discussed below, the court grants Plaintiff's Motion for Default Judgment.

### II. BACKGROUND

#### A. Factual Background[1]

Plaintiff Juliana Gomez-Cruz worked for Defendants Dae Woong Kim and Kookhee Park at their buffet and carryout restaurant, Cornerstone Café, from October 2004 through November

---

[1] Because Defendants have not filed a response, the Court treats the Complaint's factual allegations as admitted, except as to the amount of damages. Fed. R. Civ. P. 8(b)(6); *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W.*

2017. *See* Compl., ECF No. 1 [hereinafter Compl.] ¶¶ 2–7, 10. Defendants served as joint owner-managers of the café throughout Plaintiff's employment and were the "ultimate authorities" as to Plaintiff's supervision, work schedule, and conditions of employment. *Id*. ¶ 6. Plaintiff's responsibilities at the café included food preparation, taking customer orders, washing dishes and cleaning, and providing customer service. *Id*. ¶ 21. Each week, Plaintiff typically worked Monday through Friday between 5:45 a.m. to 3:30 p.m., without taking a break of more than five minutes. *Id*. ¶¶ 23–24. In all, Plaintiff "typically and customarily worked at or about forty-six and one-half hours per week." Mot. for Default J., ECF No. 13 [hereinafter Pl.'s Mot.], Aff. of Juliana Gomez-Cruz, ECF No. 13-1 [hereinafter Pl.'s Aff.], ¶ 9.

During Plaintiff's employment, Defendants maintained no timekeeping system, Compl. ¶ 22; nor did they provide Plaintiff with a paystub or report reflecting the hours she worked, *id.* ¶ 27. Defendants also purportedly withheld a certain portion of Plaintiff's gross pay for taxes. *Id.* ¶ 25. Plaintiff approximates that she "worked at or about [45 to 48] hours per week." *See id*. ¶¶ 12–13.

For her labor, Defendants paid Plaintiff a flat weekly salary of $400 from October 2004 through June 2008, $420 from July 2008 through September 2015, and $440 from October 2015 through the date of her termination in November 2017. *Id*. ¶¶ 15–17. At no point during her employment did Defendants discuss an hourly rate or terms of overtime work and compensation with Plaintiff. *Id*. ¶¶ 18–20. Plaintiff received compensation on a weekly basis by both cash and check, with no payroll reporting system reflecting the time she worked or any federal or state deductions. *Id*. ¶¶ 25–27.

---

*Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (citing *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51, 63 (2d Cir. 1971), *rev'd on other grounds*, 409 U.S. 363 (1973)).

## B. Procedural Background

On May 15, 2018, Plaintiff filed this action against Defendants alleging that they failed to pay her overtime and minimum wages during various periods of her employment in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the D.C. Minimum Wage Act Revision Act of 1992 ("DCMWA"), D.C. Code §§ 32-1001 *et seq.*, and the D.C. Wage Payment and Wage Collection Act ("DCWPA"), D.C. Code §§ 32-1301 *et seq*. *See generally* Compl. In support of these claims, Plaintiff alleges that Defendants misinformed her about her rights under federal and District of Columbia law and failed to post any notice of employee rights within the café. Compl. ¶¶ 29–33.

On August 6, 2018, after receiving no proof of service from Plaintiff, the court issued an Order to Show Cause as to why the case should not be dismissed for failure to prosecute under Federal Rule of Civil Procedure 4(m) and Local Civil Rule 83.23. *See* Order to Show Cause, ECF No. 3; Fed. R. Civ. P. 4(c). In response, on August 13, 2018, Plaintiff filed three affidavits showing that she properly served Defendants with a copy of the Complaint and a summons on August 13, 2018. *See* Affs. of Service, ECF Nos. 4–6. Despite being served, Defendants did not answer the Complaint or otherwise appear.

On September 18, 2018, the court issued a second Order to Show Cause, which directed Plaintiff to seek an entry of default and move for entry of default judgment or risk dismissal of the case. *See* Order to Show Cause, ECF No.7. Plaintiff filed an Affidavit for Default on October 11, 2018, *see* Aff. For Default, ECF No. 8, and the Clerk of the Court entered a default against Defendants, *see* Clerk's Entry of Default, ECF No. 10. Plaintiff, however, failed to move for default judgment as directed and so the court dismissed the action, without prejudice, for want of prosecution on November 20, 2018. *See* Order, ECF No. 11.

Plaintiff subsequently filed a Motion for Reconsideration and for an Extension of Time to File a Motion for Default Judgment, s*ee* Pl.'s Mot. for Reconsideration, ECF No. 12, which the court granted on December 3, 2018, *see* Minute Order, Dec. 3, 2018. In her Motion for Default Judgment, Plaintiff seeks entry of judgment against Defendants in the amount of $16,272.13 in unpaid wages plus three times that sum in liquidated damages, for a total award of $65,088.52. Pl.'s Mot. at 4–6.

## III.     LEGAL STANDARD

A party seeking a default judgment must follow the two-step process set forth in Rule 55 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 55. A plaintiff must first secure an entry of default from the Clerk of the Court and then move for entry of a default judgment. *Id.* The entry of a "default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980) (citing *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970)). Although a default judgment establishes liability, the court is required to "make an independent determination of the sum to be awarded," "unless the amount of damages is certain." *Boland v. Yoccabel Const. Co.*, 293 F.R.D. 13, 17 (D.D.C. 2013) (citing *Adkins v. Teseo,* 180 F. Supp. 2d 15, 17 (D.D.C. 2001)). To determine the appropriate amount of damages, the court may hold a hearing or it may "rely on detailed affidavits or documentary evidence." *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 68 (D.D.C. 2011). A plaintiff must prove damages to a "reasonable certainty." *Id*.

## IV. DISCUSSION

### A. Whether Entry of Default Judgment is Warranted

The court must first consider whether entry of a default judgment is warranted.[2] *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Liberty House Nursing Home of Jersey City, Inc.*, 232 F. Supp. 3d 69, 76 (D.D.C. 2017). When there is a complete "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Serv. Employees Int'l Union Nat'l Indus. Pension Fund v. Artharee*, 942 F.Supp.2d 27, 30 (D.D.C. 2013). Here, Defendants have not answered Plaintiff's Complaint or otherwise defended themselves in any way. *See generally* Docket, Case No. 18-cv-1145. Plaintiff therefore meets the standard for entry of a default judgment.

Even though a defendant has not appeared, the court may still deny a motion for default judgment "where the allegations of the complaint, even if true, are legally insufficient to make out a claim." *Gutierrez v. Berg Contracting Inc.*, No. CIV. A. 99-3044-TAF, 2000 WL 331721, at *2 (D.D.C. Mar. 20, 2000); *see also PT (Persero) Merpati Nusantara Airlines v. Thirdstone Aircraft Leasing Grp., Inc.*, 246 F.R.D. 17, 18 (D.D.C. 2007) ("A default judgment establishes the defaulting party's liability for every *well-plead* allegation in the complaint.") (emphasis added). The court here has no concern about the sufficiency of the pleading. Plaintiff represents that she worked over 40 hours per week on average, Compl. ¶ 13, yet Defendants failed to pay her at least the minimum wage and for the hours she worked overtime, Compl. ¶¶ 13–21. She also details the

---

[2] The court has assured itself that it has jurisdiction over this action based on the FLSA claim. *See* 28 U.S.C. § 1331. The court exercises supplemental jurisdiction over Plaintiff's D.C.-law claims pursuant to 28 U.S.C. § 1367. *See Robinson v. CAS 4000 Kansas LLC*, 5 F. Supp. 3d 108, 111 (D.D.C. 2013). Venue is also proper as Plaintiff alleges the events giving rise to her claims occurred in the District of Columbia. *See generally* Compl.; *see also* 28 U.S.C. § 1391(b)(2).

wages she received from May 2015 through her termination in November 2017; the average hours she worked during that date range; and the amount she is believes she is owed during each pay period. *See* Pl.'s Mot. at 4. Finally, to establish their responsibility to pay her wages, Plaintiff alleges that Defendants were each an "owner, agent, and/or principal of Cornerstone Café" who "supervis[ed] and controll[ed] Plaintiff's work schedules and conditions of employment" during the tenure of her employment. Compl. ¶¶ 5–6. These allegations are sufficient, if assumed true, to establish Defendants' liability under federal and local wage laws.

    **B.**    **Minimum Wage and Overtime Violations**

Satisfied that the Complaint sets forth plausible wage claims, the court turns to determining the sum of the award. Plaintiff must provide information "sufficient to establish an amount and extent of work and wages" owed by Defendants. *Arias v. U.S. Serv. Indus., Inc.*, 80 F.3d 509, 512 (D.C. Cir. 1996). Plaintiff has done so.

    *1.*    *Unpaid Wages*

Plaintiff's affidavit contains a table that summarizes the approximate hours she worked and wages she received from May 2015 through November 2017. Pl.'s Aff. ¶ 17. The table is reproduced below.

| TABLE 1: Total Minimum Wage & Overtime Compensation Due |||||||||||
|---|---|---|---|---|---|---|---|---|---|---|
| Date Range | Total Weeks | Weekly Salary | Average Hours Worked Per Week | DC Minimum Wage | Regular Hourly Rate | Min Wage Owed Per Week | Wage Owed Per OT Hour Worked | OT Wages Owed Per Week | Total Wages Owed Per Week | Total Wages Owed for Work Period |
| May 2015 – June 2015 | 6 | $420.00 | 46.5 | $9.50 | $10.50 | $0.00 | $15.75 | $102.38 | $102.38 | $614.25 |
| July 2015 – September 2015 | 13 | $420.00 | 46.5 | $10.50 | $10.50 | $0.00 | $15.75 | $102.38 | $102.38 | $1,330.88 |
| October 2015 – June 2016 | 39 | $440.00 | 46.5 | $10.50 | $11.00 | $0.00 | $16.50 | $107.25 | $107.25 | $4,182.75 |
| July 2016 – June 2017 | 52 | $440.00 | 46.5 | $11.50 | $11.00 | $20.00 | $17.25 | $122.13 | $132.13 | $6,870.50 |
| July 2017 – November 7, 2017 | 18 | $440.00 | 46.5 | $12.50 | $11.00 | $60.00 | $18.75 | $121.88 | $181.88 | $3,273.75 |

|  |  |  |  |  |  |  | TOTAL WAGES OWED | $16,272.13 |

In the first two rows of the table, Plaintiff represents that from May 2015 through September 2015, she worked 46.5 hours per week, but was compensated for only the first 40 hours of each of those weeks at the rate of $10.50 per hour ($420.00/40 hours per week). During this period, Plaintiff's hourly pay for the first 40 hours per week complied with both federal and District of Columbia minimum wage laws.[3] Still, Plaintiff was not paid for any time worked beyond 40 hours. Plaintiff therefore is entitled to overtime compensation at a rate of $15.75 ($10.50 per hour x 1.5) for the 6.5 extra hours worked per week, for a total of 19 weeks. As calculated below, the court agrees with Plaintiff that she is owed $1,945.13 for that period. *See* Table 2; Pl.'s Aff. ¶ 17.

| TABLE 2: May 2015 to September 2015 Compensation Breakdown | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date Range | Total Weeks | Average Hours Worked Overtime | Min Wage Owed Per Week | Wage Owed Per OT Worked | OT Wages Owed Per Week | Total Wages Owed Per Week | Total Wages Owed for Work Period | |
| May 2015 – June 2015 | 6 | 6.5 | $0.00 | $15.75 | $102.38 | $102.38 | $614.25 | |
| July 2015 – September 2015 | 13 | 6.5 | $0.00 | $15.75 | $102.38 | $102.38 | $1,330.88 | |
|  |  |  |  |  |  |  | TOTAL | $1,945.13 |

Plaintiff also represents that from October 2015 through to her termination in November 2017, she was paid $11.00 per hour for the first 40 hours of work each week, but not compensated at all for overtime work. *Id*. Calculating unpaid wages for this period is slightly more complex because the minimum wage in the District of Columbia rose first to $11.50 per hour on July, 1 2016, and rose again to $12.50 as of July 1, 2017, while Plaintiff's compensation remained unchanged at $11.00 per hour. *Compare* Pl.'s Aff. ¶ 17 *with* D.C. Code Ann. § 32-1003(a)(5)(A)(i)–(ii). Thus, Plaintiff's compensation was 50 cents below the District minimum

---

[3] The federal minimum wage at the time was $7.25 per hour, while D.C. required a minimum wage of $9.50 per hour until July 1, 2015, when the minimum wage increased to $10.50 per hour. 29 U.S.C. § 206(a)(1); D.C. Code Ann. § 32-1003(a)(3)–(4).

wage of $11.50 per hour from July 2016 to June 2017, and $1.50 below the minimum wage of $12.50 from July 2017 to November 2017. Pl.'s Aff. ¶ 17. When calculating the difference in Plaintiff's pay and the prevailing minimum wage, as well as Plaintiff's uncompensated overtime, Plaintiff has established that she is entitled to a total of $14,327 for the period from October 2015 to November 2017. *See* Table 3; Pl.'s Aff. ¶ 17.

| TABLE 3: October 2015 to November 2017 Wage Breakdown |||||||||| 
|---|---|---|---|---|---|---|---|---|---|
| Date Range | Total Weeks | Average Hours Worked Overtime | DC Minimum Wage | Regular Hourly Rate | Min Wage Owed Per Week | Wage Owed Per OT Worked | OT Wages Owed Per Week | Total Wages Owed Per Week | Total Wages Owed for Work Period |
| October 2015 – June 2016 | 39 | 6.5 | $10.50 | $11.00 | $0.00 | $16.50 | $107.25 | $107.25 | $4,182.75 |
| July 2016 – June 2017 | 52 | 6.5 | $11.50 | $11.00 | $20.00 | $17.25 | $122.13 | $132.13 | $6,870.50 |
| July 2017 – November 7, 2017 | 18 | 6.50 | $12.50 | $11.00 | $60.00 | $18.75 | $121.88 | $181.88 | $3,273.75 |
| | | | | | | | | TOTAL | $14,327.00 |

\* \* \*

The court therefore finds that, for the period of May 2015 to November 2017, Defendants owe Plaintiff a total of $16,272.13 in unpaid wages and overtime pay.

  2. *Liquidated damages*

In addition to unpaid wages, Plaintiff seeks liquidated damages. *See* Pl.'s Mot. at 4–6. Both federal and District of Columbia law allow for an award of liquidated damages against an employer who fails to comply with statutory wage requirements. 29 U.S.C. § 216(b); D.C. Code § 32-1012(b)(1). The FLSA provides for the "payment of wages lost and an additional *equal* amount as liquidated damages." 29 U.S.C. § 216(b) (emphasis added). District of Columbia law, by contrast, contains a more generous liquidated damages provision. Under the DCWPA, a plaintiff can recover an award of liquidated damages in the amount of either "10 per centum of the unpaid wages for each working day during which such failure shall continue after the day upon

which payment is hereunder required, *or* an amount equal to treble the unpaid wages, whichever is smaller." D.C. Code § 32-1303(4) (emphasis added). The court lacks sufficient record evidence to make the first of these calculations. Absent actual payroll records that reflect the dates of work and the amounts paid, the court cannot determine the "10 per centum" sum without serious guesswork. So, the court will apply treble damages, resulting in a liquidated damages award of $48,816.39 ($16,272.13 x 3). *See Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 104 (D.D.C. 2015) (stating that where "[District of Columbia] law is more generous to employees . . . the Court will first assess [liquidated] damages under D.C. law and will not award a duplicative amount pursuant to federal law") (citing 29 C.F.R. § 778.5).

Accordingly, summing the unpaid wages and the liquated damages, the court awards Plaintiff total damages in the amount of $65,088.52.

## V. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Default Judgment is granted. The court finds that Plaintiff is entitled to $65,088.52 in damages. A separate order accompanies this Memorandum Opinion.

The court will consider an attorney's fees and costs award after the court receives more detailed information supporting the request for fees and costs.

Dated: May 3, 2019

Amit P. Mehta
United States District Judge

9